## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | : | |
| **ANGELA M. SIMONE** | : | **BK. No. 19-23079-JAD** |
| **A/K/A ANGELA MAMMARELLI SIMONE** | : | |
| **D/B/A VICTOR VICTORIA HAIR. ETC.** | : | **Chapter No. 13** |
| Debtor | : | |
| | : | **Document No.** |
| **JPMORGAN CHASE BANK, NATIONAL** | : | |
| **ASSOCIATION** | : | **Hearing Date:** |
| Movant | : | |
| v. | : | **Hearing Time:** |
| **ANGELA M. SIMONE** | : | |
| **A/K/A ANGELA MAMMARELLI SIMONE** | : | **Objection Date:** |
| **D/B/A VICTOR VICTORIA HAIR. ETC.** | | |
| and | | |
| **RONDA J. WINNECOUR, ESQUIRE (TRUSTEE)** | | |
| Respondents | | |

### EXHIBIT A: PROOF OF CLAIM AND SUPPORTING LOAN DOCUMENTS

**Fill in this information to identify the case**

Debtor 1 : Angela M Simone

Debtor 2 :
(Spouse, if filing)

United States Bankruptcy Court for the: WESTERN District of: PENNSYLVANIA

Case number: 19-23079-JAD

Official Form 410

## Proof of Claim

**4/19**

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | Who is the current creditor? | JPMorgan Chase Bank, National Association |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | Has this claim been acquired from someone else? | **X** No. |
| --- | --- | --- |
| | | ☐ Yes. From Whom? |

3. Where should notices and payments to the Creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Chase Records Center
Name

Attn: Correspondence Mail
Mail Code LA4-5555

700 Kansas Lane
Number          Street

Monroe          LA          71203
City          State          Zip Code

Contact phone  1-866-243-5851
Contact email

**Where should payments to the creditor be sent?** (if different)

JPMorgan Chase Bank, N.A.
Name

Mail Code: OH4-7142

3415 Vision Drive
Number          Street

Columbus          OH          43219
City          State          Zip Code

Contact phone  1-866-243-5851
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| 4. | Does this claim amend one already filed? | **X** No. |
| --- | --- | --- |
| | | ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ mm / dd / yy |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | **X** No. |
| --- | --- | --- |
| | | ☐ Yes. Who made the earlier filing? |

Official Form 410          **Proof of Claim**          page 1

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Debtor Name  Angela M Simone

Case Number  (if known)  19-23079-JAD

---

**Part 2:**  Give Information About the Claim as of the Date the Case Was Filed

| | | | |
|---|---|---|---|
| 6 | Do you have any number you use to identify the debtor? | ☐ No. | |
| | | **X** Yes. | Last 4 digits of the debtor's account or any number you use to identify the debtor:  9813 |

7. How much is the claim?  $ 507,597.85

Does this amount include interest or other charges?

☐ No.

**X** Yes, Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

9. Is all or part of the claim secured?

☐ No.

**X** Yes.  The claim is secured by a lien on property.
Nature of property

**X** Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.

☐ Motor vehicle

☐ Other. Describe:

Basis for perfection:  Recorded Security Instrument

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of Property:  $

Amount of the claim that is secured:  $ 507,597.85

Amount of the claim that is unsecured:  $  (The sum of secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $ 89,273.74

Amount Interest Rate (When case was filed):  3.0000%
**X** Fixed

☐ Variable

10. Is this claim based on a lease?

**X** No.

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $  -

11. Is this claim subject to a right of setoff?

**X** No.

☐ Yes. Identify the property:

---

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Debtor Name    Angela M Simone

Case Number  (if known)    19-23079-JAD

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a). | X | No | | | |
|---|---|---|---|---|---|---|
| | | | Yes. Check that all apply. | | Amount entitled to priority | |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units.    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies.    $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

**Part 3:**    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate boxes:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/24/2019
                    MM / DD / YYYY

/s/ Jerome Blank, Esquire
        Signature

Print the name of the person who is completing and signing this claim:

| Name | Jerome | Blank | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Title | Attorney for Creditor |
|---|---|

| Company | Phelan Hallinan Diamond & Jones, LLP |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | Omni William Penn Office Tower, 555 Grant Street, Suite 300 |
|---|---|
| | Number        Street |

| | Pittsburgh | PA | 15219 |
|---|---|---|---|
| | City | State | Zip Code |

| Contact Phone | (215)-563-7000 Ext 31625 | Email | jerome.blank@phelanhallinan.com |
|---|---|---|---|

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Case 19-23079-JAD Doc 53-2 Filed 01/17/20 Entered 01/17/20 20:01:44 Desc
Exhibit A Proof of Claim & Supporting Loan Documents Page 5 of 63
Mortgage Proof of Claim Attachment

04/16

**Mortgage Proof of Claim Attachment**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 19-23079-JAD | Principal Balance: | $446,752.25 | Principal & interest due: | $39,086.64 | Principal & interest: | $1,628.61 |
| Debtor 1: | Angela M Simone | Deferred Balance: | $0.00 | Prepetition fees due: | $5,322.71 | Monthly escrow: | $1,596.69 |
| Debtor 2: | | Interest due: | $26,871.72 | Escrow deficiency for funds advanced: | $28,651.17 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 9813 | | | Projected escrow shortage: | $16,213.22 | | |
| Creditor: | JPMorgan Chase Bank, National Association | Fees, costs due: | $5,322.71 | Less funds on hand: | - $0.00 | Total monthly payment: | $3,225.30 |
| Servicer: | JPMorgan Chase Bank, N.A. | Escrow deficiency for funds | $28,651.17 | Amount waived post-petition | - | | |
| Fixed accrual/daily | | Less total funds on hand: | - $0.00 | Amount per Court Order | - | | |
| simple interest/other: | Fixed | Total debt: | $507,597.85 | Total prepetition arrearage: | $89,273.74 | | |
| | | | | Post-petition payments included by | | | |
| | | | | debtor or court in Total Arrearage: | + $0.00 | | |
| Case Number: | 19-23079-JAD | | | Total Arrearage | $89,273.74 | | |
| Debtor 1: | Angela M Simone | | | | | | |

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Escrow balance | O. Accrued interest balance | P. Escrow balance | Fees / Charges | Q. Unapplied funds balance |
| | | | | | | $0.00 | | | | | | $444,255.83 | | ($5,548.76) | | $0.00 | $585.01 |
| 11/01/2016 | $3,076.79 | | | PAYMENT DUE | | $3,076.79 | | | | | | $444,255.83 | | ($5,548.76) | | $0.00 | $585.01 |
| 11/01/2016 | | | $9,354.81 | MOD ADJUSTMENT FEES | | $3,076.79 | | | | | | $444,255.83 | | ($5,548.76) | | $9,354.81 | $585.01 |
| 11/03/2016 | | | | PRINCIPAL AND INTEREST ADJUSTMENT | | $3,076.79 | $(10,684.35) | | | | | $454,940.18 | | ($5,548.76) | | $9,354.81 | $585.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | | | $(42.00) | $454,940.18 | | ($5,548.76) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $5.80 | | | $454,940.18 | | ($5,542.96) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $999.99 | | | $454,940.18 | | ($4,542.97) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $999.99 | | | $454,940.18 | | ($3,542.98) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $999.99 | | | $454,940.18 | | ($2,542.99) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $999.99 | | | $454,940.18 | | ($1,543.00) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT ADVANCE | | $3,076.79 | | | $999.99 | | | $454,940.18 | | ($543.01) | | $9,354.81 | $543.01 |
| 11/03/2016 | | | | PAYMENT APPLIED | | $3,076.79 | | | $543.01 | | $(543.01) | $454,940.18 | | $0.00 | | $9,354.81 | $0.00 |
| 11/07/2016 | | | $(9,304.81) | LATE CHARGE - WAIVED | | $3,076.79 | | | | | | $454,940.18 | | $0.00 | | $50.00 | $0.00 |
| 11/07/2016 | | | $(50.00) | NSF FEE - WAIVED | | $3,076.79 | | | | | | $454,940.18 | | $0.00 | | $0.00 | $0.00 |
| 11/16/2016 | | | $81.43 | LATE CHARGE - ASSESSED | | $3,076.79 | | | | | | $454,940.18 | | $0.00 | | $81.43 | $0.00 |
| 11/30/2016 | | $3,076.79 | | PAYMENT TO SUSPENSE | | $3,076.79 | | | | | $3,076.79 | $454,940.18 | | $0.00 | | $81.43 | $3,076.79 |
| 11/30/2016 | | | | PAYMENT APPLIED | 11/01/2016 | $0.00 | $491.26 | $1,137.35 | $1,448.18 | | $(3,076.79) | $454,448.92 | | $1,448.18 | | $81.43 | $0.00 |
| 12/01/2016 | $3,051.27 | | | PAYMENT DUE | | $3,051.27 | | | | | | $454,448.92 | | $1,448.18 | | $81.43 | $0.00 |
| 12/16/2016 | | | $81.43 | LATE CHARGE - ASSESSED | | $3,051.27 | | | | | | $454,448.92 | | $1,448.18 | | $162.86 | $0.00 |
| 01/01/2017 | $3,076.79 | | | PAYMENT DUE | | $6,128.06 | | | | | | $454,448.92 | | $1,448.18 | | $162.86 | $0.00 |
| 01/06/2017 | | | | HOMEOWNERS INSURANCE | | $6,128.06 | | | $(2,494.12) | | | $454,448.92 | | $(1,045.94) | | $162.86 | $0.00 |
| 01/17/2017 | | | $81.43 | LATE CHARGE - ASSESSED | | $6,128.06 | | | | | | $454,448.92 | | $(1,045.94) | | $244.29 | $0.00 |
| 02/01/2017 | $3,102.31 | | | PAYMENT DUE | | $9,230.37 | | | | | | $454,448.92 | | $(1,045.94) | | $244.29 | $0.00 |
| 02/16/2017 | | | $81.43 | LATE CHARGE - ASSESSED | | $9,230.37 | | | | | | $454,448.92 | | $(1,045.94) | | $325.72 | $0.00 |
| 02/24/2017 | | | | COUNTY TAX | | $9,230.37 | | | $(2,947.18) | | | $454,448.92 | | ($3,993.12) | | $325.72 | $0.00 |
| 03/01/2017 | $3,102.31 | | | PAYMENT DUE | | $12,332.68 | | | | | | $454,448.92 | | ($3,993.12) | | $325.72 | $0.00 |
| 03/16/2017 | | | $81.43 | LATE CHARGE - ASSESSED | | $12,332.68 | | | | | | $454,448.92 | | ($3,993.12) | | $407.15 | $0.00 |
| 03/31/2017 | | $3,076.79 | | PAYMENT APPLIED | 12/01/2016 | $9,255.89 | $492.49 | $1,136.12 | $1,448.18 | | | $453,956.43 | | ($2,544.94) | | $407.15 | $0.00 |
| 04/01/2017 | $3,102.31 | | | PAYMENT DUE | | $12,358.20 | | | | | | $453,956.43 | | ($2,544.94) | | $407.15 | $0.00 |
| 04/11/2017 | | $(3,076.79) | | RETURNED ITEM | 12/01/2016 | $15,434.99 | $(492.49) | $(1,136.12) | $(1,448.18) | | | $454,448.92 | | ($3,993.12) | | $407.15 | $0.00 |
| 04/17/2017 | | | $81.43 | LATE CHARGE - ASSESSED | | $15,434.99 | | | | | | $454,448.92 | | ($3,993.12) | | $488.58 | $0.00 |
| 04/21/2017 | | $3,076.79 | | PAYMENT APPLIED | 12/01/2016 | $12,358.20 | $492.49 | $1,136.12 | $1,448.18 | | | $453,956.43 | | ($2,544.94) | | $488.58 | $0.00 |
| 04/29/2017 | | $3,076.79 | | PAYMENT TO SUSPENSE | | $12,358.20 | | | | | $3,076.79 | $453,956.43 | | ($2,544.94) | | $488.58 | $3,076.79 |
| 04/29/2017 | | | | PAYMENT APPLIED | 01/01/2017 | $9,281.41 | $493.72 | $1,134.89 | $1,448.18 | | $(3,076.79) | $453,462.71 | | ($1,096.76) | | $488.58 | $0.00 |
| 05/01/2017 | $3,102.31 | | | PAYMENT DUE | | $12,383.72 | | | | | | $453,462.71 | | ($1,096.76) | | $488.58 | $0.00 |
| 05/09/2017 | | $(3,076.79) | | RETURNED ITEM | 01/01/2017 | $15,460.51 | $(493.72) | $(1,134.89) | $(1,448.18) | | | $453,956.43 | | ($2,544.94) | | $488.58 | $0.00 |
| 05/16/2017 | | | $81.43 | LATE CHARGE - ASSESSED | | $15,460.51 | | | | | | $453,956.43 | | ($2,544.94) | | $570.01 | $0.00 |
| 05/31/2017 | | $3,102.31 | | PAYMENT APPLIED | 01/01/2017 | $12,383.72 | $493.72 | $1,134.89 | $1,448.18 | | $25.52 | $453,462.71 | | ($1,096.76) | | $570.01 | $25.52 |
| 06/01/2017 | $3,102.31 | | | PAYMENT DUE | | $15,486.03 | | | | | | $453,462.71 | | ($1,096.76) | | $570.01 | $25.52 |
| 06/01/2017 | | | | MISAPPLICATION REVERSAL | | $15,486.03 | | | | | $(25.52) | $453,462.71 | | ($1,096.76) | | $570.01 | $0.00 |
| 06/09/2017 | | | | MISAPPLICATION REVERSAL | 01/01/2017 | $18,562.82 | $(493.72) | $(1,134.89) | $(1,448.18) | | $3,076.79 | $453,956.43 | | ($2,544.94) | | $570.01 | $3,076.79 |
| 06/09/2017 | | | | MISAPPLICATION REVERSAL | 12/01/2016 | $21,639.61 | $(492.49) | $(1,136.12) | $(1,448.18) | | $3,076.79 | $454,448.92 | | ($3,993.12) | | $570.01 | $6,153.58 |
| 06/09/2017 | | $(3,102.31) | | RETURNED ITEM | | $21,639.61 | | | | | $(3,102.31) | $454,448.92 | | ($3,993.12) | | $570.01 | $3,051.27 |
| 07/01/2017 | $3,102.31 | | | PAYMENT DUE | | $24,741.92 | | | | | | $454,448.92 | | ($3,993.12) | | $570.01 | $3,051.27 |
| 07/18/2017 | | | | PAYMENT APPLIED | 12/01/2016 | $21,690.65 | $492.49 | $1,136.12 | $1,422.66 | | $(3,051.27) | $453,956.43 | | ($2,570.46) | | $570.01 | $0.00 |
| 08/01/2017 | $3,102.31 | | | PAYMENT DUE | | $24,792.96 | | | | | | $453,956.43 | | ($2,570.46) | | $570.01 | $0.00 |
| 08/16/2017 | | | | SCHOOL TAX | | $24,792.96 | | | $(10,539.76) | | | $453,956.43 | | ($13,110.22) | | $570.01 | $0.00 |
| 08/21/2017 | | | | TOWNSHIP TAX | | $24,792.96 | | | $(2,005.46) | | | $453,956.43 | | ($15,115.68) | | $570.01 | $0.00 |
| 09/01/2017 | $3,102.31 | | | PAYMENT DUE | | $27,895.27 | | | | | | $453,956.43 | | ($15,115.68) | | $570.01 | $0.00 |
| 10/01/2017 | $3,102.31 | | | PAYMENT DUE | | $30,997.58 | | | | | | $453,956.43 | | ($15,115.68) | | $570.01 | $0.00 |
| 11/01/2017 | $3,194.19 | | | PAYMENT DUE | | $34,191.77 | | | | | | $453,956.43 | | ($15,115.68) | | $570.01 | $0.00 |
| 11/16/2017 | | | | HOMEOWNERS INSURANCE | | $34,191.77 | | | $(2,352.72) | | | $453,956.43 | | ($17,468.40) | | $570.01 | $0.00 |
| 12/01/2017 | $3,194.19 | | | PAYMENT DUE | | $37,385.96 | | | | | | $453,956.43 | | ($17,468.40) | | $570.01 | $0.00 |
| 12/04/2017 | | | | ONE TIME TAX PAYMENT | | $37,385.96 | | | $(2,226.33) | | | $453,956.43 | | ($19,694.73) | | $570.01 | $0.00 |
| 12/15/2017 | | $3,076.79 | | PAYMENT APPLIED | 01/01/2017 | $34,309.17 | $493.72 | $1,134.89 | $1,448.18 | | | $453,462.71 | | ($18,246.55) | | $570.01 | $0.00 |

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Case 19-23079-JAD Doc 53-2 Filed 01/17/20 Entered 01/17/20 20:01:44 Desc
Exhibit A Proof of Claim & Supporting Loan Documents Page 6 of 63

Mortgage Proof of Claim Attachment

04/16

**Part 5 : Loan Payment History from First Date of Default**

| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/2017 | | $21,716.17 | | PAYMENT APPLIED | 02/01/2017 | $31,206.86 | $494.95 | $1,133.66 | $1,473.70 | | | $452,967.76 | | ($16,772.85) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 03/01/2017 | $28,104.55 | $496.19 | $1,132.42 | $1,473.70 | | | $452,471.57 | | ($15,299.15) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 04/01/2017 | $25,002.24 | $497.43 | $1,131.18 | $1,473.70 | | | $451,974.14 | | ($13,825.45) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 05/01/2017 | $21,899.93 | $498.67 | $1,129.94 | $1,473.70 | | | $451,475.47 | | ($12,351.75) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 06/01/2017 | $18,797.62 | $499.92 | $1,128.69 | $1,473.70 | | | $450,975.55 | | ($10,878.05) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 07/01/2017 | $15,695.31 | $501.17 | $1,127.44 | $1,473.70 | | | $450,474.38 | | ($9,404.35) | $570.01 | $0.00 |
| 12/15/2017 | | | | PAYMENT APPLIED | 08/01/2017 | $12,593.00 | $502.42 | $1,126.19 | $1,473.70 | | | $449,971.96 | | ($7,930.65) | $570.01 | $0.00 |
| 12/15/2017 | $2,898.15 | | | PAYMENT TO SUSPENSE | | $12,593.00 | | | | | $2,898.15 | $449,971.96 | | ($7,930.65) | $570.01 | $2,898.15 |
| 01/01/2018 | $3,194.19 | | | PAYMENT DUE | | $15,787.19 | | | | | | $449,971.96 | | ($7,930.65) | $570.01 | $2,898.15 |
| 01/11/2018 | $25.52 | | | PAYMENT TO SUSPENSE | | $15,787.19 | | | | | $25.52 | $449,971.96 | | ($7,930.65) | $570.01 | $2,923.67 |
| 02/01/2018 | $3,194.19 | | | PAYMENT DUE | | $18,981.38 | | | | | | $449,971.96 | | ($7,930.65) | $570.01 | $2,923.67 |
| 02/21/2018 | | | | SPECIAL ESCROW DEPOSIT | | $18,981.38 | | | $450.00 | | | $449,971.96 | | ($7,480.65) | $570.01 | $2,923.67 |
| 02/26/2018 | | | | COUNTY TAX | | $18,981.38 | | | $(2,947.18) | | | $449,971.96 | | ($10,427.83) | $570.01 | $2,923.67 |
| 03/01/2018 | $3,194.19 | | | PAYMENT DUE | | $22,175.57 | | | | | | $449,971.96 | | ($10,427.83) | $570.01 | $2,923.67 |
| 04/01/2018 | $3,194.19 | | | PAYMENT DUE | | $25,369.76 | | | | | | $449,971.96 | | ($10,427.83) | $570.01 | $2,923.67 |
| 04/04/2018 | | | $(570.01) | LATE CHARGE - WAIVED | | $25,369.76 | | | | | | $449,971.96 | | ($10,427.83) | $0.00 | $2,923.67 |
| 05/01/2018 | $3,194.19 | | | PAYMENT DUE | | $28,563.95 | | | | | | $449,971.96 | | ($10,427.83) | $0.00 | $2,923.67 |
| 05/24/2018 | | | $325.00 | TITLE FEES | | $28,563.95 | | | | | | $449,971.96 | | ($10,427.83) | $325.00 | $2,923.67 |
| 06/01/2018 | $3,194.19 | | | PAYMENT DUE | | $31,758.14 | | | | | | $449,971.96 | | ($10,427.83) | $325.00 | $2,923.67 |
| 06/07/2018 | | | | PAYMENT ADVANCE REPAYMENT | | $31,758.14 | | | | | $296.04 | $449,971.96 | | ($10,427.83) | $325.00 | $3,219.71 |
| 07/01/2018 | $3,194.19 | | | PAYMENT DUE | | $34,952.33 | | | | | | $449,971.96 | | ($10,427.83) | $325.00 | $3,219.71 |
| 08/01/2018 | $3,194.19 | | | PAYMENT DUE | | $38,146.52 | | | | | | $449,971.96 | | ($10,427.83) | $325.00 | $3,219.71 |
| 08/10/2018 | | | | SCHOOL TAX | | $38,146.52 | | | $(10,837.89) | | | $449,971.96 | | ($21,265.72) | $325.00 | $3,219.71 |
| 08/10/2018 | | | | TOWNSHIP TAX | | $38,146.52 | | | $(2,005.46) | | | $449,971.96 | | ($23,271.18) | $325.00 | $3,219.71 |
| 09/01/2018 | $3,194.19 | | | PAYMENT DUE | | $41,340.71 | | | | | | $449,971.96 | | ($23,271.18) | $325.00 | $3,219.71 |
| 09/04/2018 | | | | PRINCIPAL PAYMENT | | $41,340.71 | $3,219.71 | | | | $(3,219.71) | $446,752.25 | | ($23,271.18) | $325.00 | $0.00 |
| 09/24/2018 | | | $171.75 | FCL FILING FEE | | $41,340.71 | | | | | | $446,752.25 | | ($23,271.18) | $496.75 | $0.00 |
| 09/24/2018 | | | $125.00 | FCL FILING FEE | | $41,340.71 | | | | | | $446,752.25 | | ($23,271.18) | $621.75 | $0.00 |
| 09/28/2018 | | | $560.00 | FC ATTY FEE | | $41,340.71 | | | | | | $446,752.25 | | ($23,271.18) | $1,181.75 | $0.00 |
| 10/01/2018 | $3,194.19 | | | PAYMENT DUE | | $44,534.90 | | | | | | $446,752.25 | | ($23,271.18) | $1,181.75 | $0.00 |
| 10/01/2018 | | | $13.67 | FCL FILING FEE | | $44,534.90 | | | | | | $446,752.25 | | ($23,271.18) | $1,195.42 | $0.00 |
| 10/02/2018 | | | $560.00 | FC ATTY FEE | | $44,534.90 | | | | | | $446,752.25 | | ($23,271.18) | $1,755.42 | $0.00 |
| 11/01/2018 | $3,257.49 | | | PAYMENT DUE | | $47,792.39 | | | | | | $446,752.25 | | ($23,271.18) | $1,755.42 | $0.00 |
| 11/06/2018 | | | $35.00 | FC MISC | | $47,792.39 | | | | | | $446,752.25 | | ($23,271.18) | $1,790.42 | $0.00 |
| 11/06/2018 | | | $41.50 | FCL FILING FEE | | $47,792.39 | | | | | | $446,752.25 | | ($23,271.18) | $1,831.92 | $0.00 |
| 11/15/2018 | | | $560.00 | FC ATTY FEE | | $47,792.39 | | | | | | $446,752.25 | | ($23,271.18) | $2,391.92 | $0.00 |
| 11/16/2018 | | | | HOMEOWNERS INSURANCE | | $47,792.39 | | | $(2,432.81) | | | $446,752.25 | | ($25,703.99) | $2,391.92 | $0.00 |
| 11/20/2018 | | | $85.00 | FCL SERVICE | | $47,792.39 | | | | | | $446,752.25 | | ($25,703.99) | $2,476.92 | $0.00 |
| 11/20/2018 | | | $5.22 | FCL MAIL | | $47,792.39 | | | | | | $446,752.25 | | ($25,703.99) | $2,482.14 | $0.00 |
| 11/20/2018 | | | $1.20 | FCL MAIL | | $47,792.39 | | | | | | $446,752.25 | | ($25,703.99) | $2,483.34 | $0.00 |
| 11/20/2018 | | | $5.22 | FCL MAIL | | $47,792.39 | | | | | | $446,752.25 | | ($25,703.99) | $2,488.56 | $0.00 |
| 11/20/2018 | | | $5.22 | FCL MAIL | | $47,792.39 | | | | | | $446,752.25 | | ($25,703.99) | $2,493.78 | $0.00 |
| 12/01/2018 | $3,257.49 | | | PAYMENT DUE | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $2,493.78 | $0.00 |
| 12/06/2018 | | | $250.00 | FC ATTY FEE | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $2,743.78 | $0.00 |
| 12/06/2018 | | | $5.36 | FCL MAIL | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $2,749.14 | $0.00 |
| 12/06/2018 | | | $85.00 | FCL SERVICE | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $2,834.14 | $0.00 |
| 12/19/2018 | | | $250.00 | FC ATTY FEE | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $3,084.14 | $0.00 |
| 12/28/2018 | | | $75.00 | FCL FILING FEE | | $51,049.88 | | | | | | $446,752.25 | | ($25,703.99) | $3,159.14 | $0.00 |
| 01/01/2019 | $3,257.49 | | | PAYMENT DUE | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,159.14 | $0.00 |
| 01/04/2019 | | | $100.00 | FC ATTY FEE | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,259.14 | $0.00 |
| 01/08/2019 | | | $3.68 | FCL MAIL | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,262.82 | $0.00 |
| 01/23/2019 | | | $0.94 | FCL MAIL | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,263.76 | $0.00 |
| 01/24/2019 | | | $250.00 | FC ATTY FEE | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,513.76 | $0.00 |
| 01/24/2019 | | | $2.80 | FCL MAIL | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,516.56 | $0.00 |
| 01/27/2019 | | | $85.00 | FCL SERVICE | | $54,307.37 | | | | | | $446,752.25 | | ($25,703.99) | $3,601.56 | $0.00 |
| 02/01/2019 | $3,257.49 | | | PAYMENT DUE | | $57,564.86 | | | | | | $446,752.25 | | ($25,703.99) | $3,601.56 | $0.00 |
| 02/12/2019 | | | $250.00 | FC ATTY FEE | | $57,564.86 | | | | | | $446,752.25 | | ($25,703.99) | $3,851.56 | $0.00 |
| 03/01/2019 | $3,257.49 | | | PAYMENT DUE | | $60,822.35 | | | | | | $446,752.25 | | ($25,703.99) | $3,851.56 | $0.00 |
| 03/07/2019 | | | | COUNTY TAX | | $60,822.35 | | | $(2,947.18) | | | $446,752.25 | | ($28,651.17) | $3,851.56 | $0.00 |
| 03/26/2019 | | | $400.00 | LITIGATION | | $60,822.35 | | | | | | $446,752.25 | | ($28,651.17) | $4,251.56 | $0.00 |
| 03/27/2019 | | | $100.00 | FC ATTY FEE | | $60,822.35 | | | | | | $446,752.25 | | ($28,651.17) | $4,351.56 | $0.00 |
| 04/01/2019 | $3,257.49 | | | PAYMENT DUE | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,351.56 | $0.00 |
| 04/01/2019 | | | $250.00 | FC ATTY FEE | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,601.56 | $0.00 |
| 04/01/2019 | | | $2.35 | FCL MAIL | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,603.91 | $0.00 |
| 04/02/2019 | | | $2.35 | FCL MAIL | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,606.26 | $0.00 |
| 04/04/2019 | | | $0.50 | FCL MAIL | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,606.76 | $0.00 |
| 04/05/2019 | | | $0.50 | FCL MAIL | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,607.26 | $0.00 |
| 04/23/2019 | | | $250.00 | FC ATTY FEE | | $64,079.84 | | | | | | $446,752.25 | | ($28,651.17) | $4,857.26 | $0.00 |
| 05/01/2019 | $3,257.49 | | | PAYMENT DUE | | $67,337.33 | | | | | | $446,752.25 | | ($28,651.17) | $4,857.26 | $0.00 |
| 06/01/2019 | $3,257.49 | | | PAYMENT DUE | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,857.26 | $0.00 |
| 06/12/2019 | | | $2.80 | SALES & USE TAX | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,860.06 | $0.00 |
| 06/12/2019 | | | $4.20 | SALES & USE TAX | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,864.26 | $0.00 |

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Case 19-23079-JAD Doc 53-2 Filed 01/17/20 Entered 01/17/20 20:01:44 Desc
Exhibit A Proof of Claim & Supporting Loan Documents Page 7 of 63

Mortgage Proof of Claim Attachment                                                                                                                04/16

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance | |
| 06/12/2019 | | | $40.00 | LOCK CHANGE | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,904.26 | $0.00 | |
| 06/12/2019 | | | $60.00 | LOCK CHANGE | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,964.26 | $0.00 | |
| 06/26/2019 | | | $8.05 | SALES & USE TAX | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $4,972.31 | $0.00 | |
| 06/26/2019 | | | $115.00 | YARD MAINTENANCE | | $70,594.82 | | | | | | $446,752.25 | | ($28,651.17) | $5,087.31 | $0.00 | |
| 07/01/2019 | $3,257.49 | | | PAYMENT DUE | | $73,852.31 | | | | | | $446,752.25 | | ($28,651.17) | $5,087.31 | $0.00 | |
| 07/10/2019 | | | $7.70 | SALES & USE TAX | | $73,852.31 | | | | | | $446,752.25 | | ($28,651.17) | $5,095.01 | $0.00 | |
| 07/10/2019 | | | $110.00 | YARD MAINTENANCE | | $73,852.31 | | | | | | $446,752.25 | | ($28,651.17) | $5,205.01 | $0.00 | |
| 07/25/2019 | | | $7.70 | SALES & USE TAX | | $73,852.31 | | | | | | $446,752.25 | | ($28,651.17) | $5,212.71 | $0.00 | |
| 07/25/2019 | | | $110.00 | YARD MAINTENANCE | | $73,852.31 | | | | | | $446,752.25 | | ($28,651.17) | $5,322.71 | $0.00 | |
| 08/01/2019 | $3,257.49 | | | PAYMENT DUE | | $77,109.80 | | | | | | $446,752.25 | | ($28,651.17) | $5,322.71 | $0.00 | |
| 08/03/2019 | | | | BK FILED DATE | | $77,109.80 | | | | | | $446,752.25 | | ($28,651.17) | $5,322.71 | $0.00 | |

Official Form 410A                                Mortgage Proof of Claim Attachment

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

| | | | | | | |
|---|---|---|---|---|---|---|
| Servicer Loan # | 9813 | | Interest Rate | 3.0000% | | |
| Borrower Name | Angela M Simone | | 1st Principal Balance | $446,752.25 | | |
| BK Case Number | 19-23079-JAD | | Escrow Balance | $ (28,651.17) | | |
| | | | Suspense Balance | $ - | | |

| Transaction Description | Transaction Code | Transaction Date | Ins Premium Disb Due Date | Escrow Amount | Escrow Disbursement | Escrow Balance |
|---|---|---|---|---|---|---|
| Disb. for SCHOOL TAX | 311 | 08/10/2018 | 08/10/2018 | | $(10,837.89) | $ (21,265.72) |
| Disb. for TOWNSHIP TAX | 316 | 08/10/2018 | 08/10/2018 | | $(2,005.46) | $ (23,271.18) |
| Disb. for HOMEOWNERS INSURANC | 351 | 11/16/2018 | 11/16/2018 | | $(2,432.81) | $ (25,703.99) |
| Disb. for COUNTY TAX | 312 | 03/07/2019 | 03/07/2019 | | $(2,947.18) | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |
| | | | | | | $ (28,651.17) |

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

UNITED STATES BANKRUPTCY COURT
WESTERN District of Pennsylvania (PITTSBURGH)
Bankruptcy Petition #: 19-23079 JAD

In Re:

ANGELA M. SIMONE  **(Debtor)**

Jerome Blank, Esq., Id. No.49736 certifies that a true and correct copy of the attached Proof of Claim was served via first class mail upon the following person(s):

JEFFREY J. SIKIRICA
121 NORTHBROOK DRIVE, PINE TOWNSHIP
GIBSONIA, PA 15044
SikiricaLaw@zoominternet.net
**(Attorney for Debtor)**

RONDA J. WINNECOUR
SUITE 3250, USX TOWER, 600 GRANT STREET
PITTSBURGH, PA 15219
cmecf@chapter13trusteewdpa.com
**(Chapter 13 Trustee)**

OFFICE OF THE UNITED STATES TRUSTEE
LIBERTY CENTER, 1001 LIBERTY AVENUE, STE 970
PITTSBURGH, PA 15222
Ustp.region03@usdoj.gov
**(US Trustee)**

ANGELA M. SIMONE
5467 CURRY ROAD, PITTSBURGH, PA 15236-2821


**(Debtor)**

Date ___10/24/2019_____

/s/ Jerome Blank, Esquire
Jerome Blank, Esq., Id. No.49736
Phelan Hallinan Diamond & Jones, LLP
Omni William Penn Office Tower
555 Grant Street, Suite 300
Pittsburgh, PA 15219
Phone Number: 215-563-7000 Ext 31625
Fax Number: 215-568-7616
Email: jerome.blank@phelanhallinan.com

# CHASE

| | |
|---|---|
| **Customer Service Center** | 1-800-848-9136 |
| Monday - Friday | 8 a.m. - 12 a.m.(ET) |
| Saturday | 8 a.m. - 8 p.m. (ET) |
| Hearing Impaired (TDD) | 1-800-582-0542 |

ANGELA MAMMARELLI SIMONE
5467 CURRY RD
PITTSBURGH, PA    15236-2821

**Escrow: Taxes and Insurance Statement**

| | |
|---|---|
| Loan Number | |
| Statement Date | 08/07/2019 |
| Review Period | 11/2018 to 08/2019 |
| **Escrow Shortage** | **$0.00** |

## Important Message

For more information about escrow, visit **chase.com/ManageMyMortgage.**

If you are in bankruptcy or have been given a discharge for your bankruptcy, this letter is for information only. This letter is not an attempt to collect a debt. It is not an attempt to collect, assess or recover all or part of the debt from you. If a bankruptcy trustee is making your payments for you, please give a copy of this statement to the trustee.

Your escrow shortage amount does not include any actual shortage that might have been included before you filed for bankruptcy.

## Monthly Home Loan Payment

| | Current Payment | New Payment Effective 09/01/2019 |
|---|---|---|
| Principal & Interest | $1,628.61 | $1,628.61 |
| Escrow Account Deposit | $1,473.70 | $1,596.69 |
| **Total Payment Amount** | **$3,102.31** | **$3,225.30** |

## Summary

**Your escrow account is balanced.**

You have exactly the amount of money in your escrow account needed to pay your estimated property taxes and/or insurance for next year. Keep this statement for your records. You do not need to do anything else.

Your monthly payment will be $3,225.30 starting 09/01/19.

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

## Balancing Your Escrow Account

There needs to be enough money in your escrow account to pay your property taxes and/or insurance. To do that, federal law allows us to require that you keep a minimum balance in your account. This cash reserve helps to cover any increase in taxes and/or insurance. However, the minimum balance requirement has been waived for your account.

The payments made to and from your escrow account last year help predict your account activity for next year. This year's activity also helps predict what your lowest account balance is likely to be.[1]

To balance your escrow account, we compare what your lowest account balance will likely be next year with your minimum required balance. If there is no difference between the numbers, your escrow account is balanced.

| | |
|---|---|
| $0.00 | Your minimum required balance |
| $-6,841.23 | Your estimated lowest account balance for 2020[1] |
| **$0.00** | **Your escrow account is balanced** |

[1]See the "Estimated Escrow Activity" chart in this statement.

## Escrow Account History

The chart below compares this year's activity on your escrow account with our estimates. The estimated amounts came from your last escrow account review.

■ Your most recent mortgage payment due was $3,102.31. Your mortgage payment includes principal and interest $1,628.61 and escrow money $1,473.70.

■ At the time of your last escrow account review, your expected lowest balance was $0.00. The chart below shows that your actual lowest escrow balance was $-28,651.17.

Note: changes in property taxes or insurance premiums create the difference between the estimated and actual amounts in the chart. An "E" in the chart below means expected activity that hasn't occurred yet.

*Indicates a difference between the estimated and actual amounts.

### This Year: November 2018 to August 2019

| Date | Activity | Estimated Amount | Actual Amount | | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|---|
| | Starting Balance | | | | $3,023.85 | $-23,271.18 |
| 11/2018 | Deposit | $1,511.94 | $0.00 | * | | |
| | Withdrawal - HOMEOWNER IN | | $2,432.81 | * | $4,535.79 | $-25,703.99 |
| 12/2018 | Deposit | $1,511.94 | $0.00 | * | | |
| | Withdrawal - HOMEOWNER IN | $2,352.72 | $0.00 | * | $3,695.01 | $-25,703.99 |
| 01/2019 | Deposit | $1,511.94 | $0.00 | * | $5,206.95 | $-25,703.99 |
| 02/2019 | Deposit | $1,511.94 | $0.00 | * | $6,718.89 | $-25,703.99 |
| 03/2019 | Deposit | $1,511.94 | $0.00 | * | | |
| | Withdrawal - COUNTY TAX | $2,947.18 | $2,947.18 | | $5,283.65 | $-28,651.17 |
| 04/2019 | Deposit | $1,511.94 | $0.00 | * | $6,795.59 | $-28,651.17 |
| 05/2019 | Deposit | $1,511.94 | $0.00 | * | $8,307.53 | $-28,651.17 |
| 06/2019 | Deposit | $1,511.94 | $0.00 | * | $9,819.47 | $-28,651.17 |
| 07/2019 | Deposit | $1,511.94 | $0.00 | * | $11,331.41 | $-28,651.17 |
| 08/2019 | Deposit | $1,511.94 | $38,023.16 | E | | |
| | Withdrawal - SCHOOL TAX | $10,837.89 | $11,153.38 | E | $2,005.46 | $-1,781.39 |
| 08/2019 | Withdrawal - TOWNSHIP TAX | $2,005.46 | $2,626.97 | E | $0.00 | $-4,408.36 |
| 08/2019 | Withdrawal - HOMEOWNER IN | | $2,432.81 | E | $0.00 | $-6,841.17 |

(Continued)

# CHASE

**Escrow: Taxes and Insurance Statement**

| | |
|---|---|
| Loan Number | |
| Statement Date | 08/07/2019 |
| Review Period | 11/2018 to 08/2019 |
| **Escrow Shortage** | **$0.00** |

ANGELA MAMMARELLI SIMONE
5467 CURRY RD
PITTSBURGH, PA   15236-2821

### This Year: November 2018 to August 2019 (continued)

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| 09/2019 | Deposit | $1,511.94 | $0.00 * | $1,511.94 | $0.00 |
| 10/2019 | Deposit | $1,511.94 | $0.00 * | $3,023.88 | $0.00 |
| | Total Deposits | $18,143.28 | $38,023.16 | | |
| | Total Withdrawals | $18,143.25 | $21,593.15 | | |
| | Account Balance as of 08/2019 | | | | $-6,841.17 |

### Expected Escrow Account Activity

The chart below estimates your escrow account balance for the next 12 months with your new monthly escrow account deposit of $1,596.69 and any anticipated withdrawals. The chart shows that you will reach your estimated lowest account balance of $-6,841.23 in August 2020 (highlighted below). That is equal to your minimum required balance of $0.00.

### Next Year: September 2019 to August 2020

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | | $-6,841.17 |
| 09/2019 | Deposit | $1,596.69 | | $-5,244.48 | |
| 10/2019 | Deposit | $1,596.69 | | $-3,647.79 | |
| 11/2019 | Deposit | $1,596.69 | | $-2,051.10 | |
| 12/2019 | Deposit | $1,596.69 | | $-454.41 | |
| 01/2020 | Deposit | $1,596.69 | | $1,142.28 | |
| 02/2020 | Deposit | $1,596.69 | | $2,738.97 | |
| 03/2020 | Deposit | $1,596.69 | | | |
| | Withdrawal - COUNTY TAX | $2,947.18 | | $1,388.48 | |
| 04/2020 | Deposit | $1,596.69 | | $2,985.17 | |
| 05/2020 | Deposit | $1,596.69 | | | |
| | Withdrawal - HOMEOWNER IN | $2,432.81 | | $2,149.05 | |
| 06/2020 | Deposit | $1,596.69 | | $3,745.74 | |
| 07/2020 | Deposit | $1,596.69 | | $5,342.43 | |
| 08/2020 | Deposit | $1,596.69 | | | |
| | Withdrawal - SCHOOL TAX | $11,153.38 | | $-4,214.26 | |
| 08/2020 | Withdrawal - TOWNSHIP TAX | $2,626.97 | | $-6,841.23 | |
| | Total Estimated Deposits | $19,160.28 | | | |
| | Total Estimated Withdrawals | $19,160.34 | | | |
| | Estimated Account Balance as of August 2020 | | | $-6,841.23 | |

### Expected Escrow Account Payments

This section reflects the escrow activity that is expected to occur in the next 12 months. The "Total Tax and Insurance Monthly Payment Amount" at the bottom of this chart is your new monthly escrow deposit, as listed on page 1 of this statement.

| Tax | | | Insurance | | |
|---|---|---|---|---|---|
| Item | Annual Expense | Anticipated Date(s) of Payment | Item | Annual Expense | Anticipated Date(s) of Payment |
| COUNTY TAX | $2,947.18 | March 20 | HOMEOWNER IN | $2,432.81 | May 20 |
| SCHOOL TAX | $11,153.38 | August 20 | | | |
| TOWNSHIP TAX | $2,626.97 | August 20 | | | |

Total Tax and Insurance Monthly Payment Amount = $1,596.69

This Page Intentionally Left Blank

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41



A QUICK GUIDE TO UNDERSTANDING YOUR

# Annual Escrow Analysis



**Current Monthly Mortgage Payment**

**New Monthly Mortgage Payment**

**Escrow Account Summary**

This section shows if your escrow account is balanced, or if it has a surplus or a shortage. If you have a shortage, it explains your options to pay the difference. If you have a surplus of more than $50, your refund check is attached.

**Escrow Shortage Coupon or Surplus Check**

If you have a shortage, you can use this coupon to mail a full or partial payment of your escrow shortage. You can also pay all or part of your shortage at **chase.com**. If you have a surplus, your surplus check will be attached here. Please detach and cash it.

**Escrow Account History**

The activity for your escrow account from the past year is shown here, along with what we estimated your payments would be.

**Expected Escrow Activity for Next Year**

We've calculated what we expect your escrow account balance will be for the upcoming year, based on your current tax and insurance expenses. However, your account could have a shortage or a surplus at the end of the upcoming year, if your tax and/or insurance costs change.

**Expected Escrow Payment for Next Year**

These are the tax and/or insurance amounts we expect to pay in the next 12 months, and when we expect to pay them. If you believe information is missing or incorrect, please call us at 1-800-848-9136.

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41



**CHASE** ⬡

### FREQUENTLY ASKED QUESTIONS

#### Why am I getting an Escrow Analysis?

We run your Escrow Analysis annually so you know the amount of taxes and/or insurance we paid for you this past year
with funds from your escrow account. We also include what we expect to pay next year.

#### How is my monthly escrow payment calculated?

Each year, we project how much you'll need in your escrow account to pay your taxes and/or insurance for the upcoming
year, based on your taxes and/or insurance at the time of your Escrow Analysis. You pay a portion of the total projected
escrow amount each month with your mortgage payment. We then use those escrow funds to pay your taxes and/or
insurance on your behalf.

If your taxes and/or insurance change during the next 12 months, you could have a shortage or surplus in your account
when we run next year's analysis.

#### What is an escrow minimum balance?

For most accounts, the minimum required balance is equal to two months of escrow payments. This minimum balance
helps cover any increases in your taxes and/or insurance over the next year.

### ESCROW RESOURCES

- View your annual Escrow Analysis online to see if your monthly mortgage payment is changing due to an increase
  or decrease in your property taxes and/or insurance at **chase.com/EscrowAnalysis.**

- For answers to more questions and to watch our informational video, visit **chase.com/Escrow.**

- To stay informed about activity from your escrow account throughout the year, sign up for free escrow alerts at
  **chase.com/Alerts.**



©2015 JPMorgan Chase & Co.

58699-EGE-0215

| Due Annually | | | |
|---|---|---|---|
| Insurance | $2,432.81 | | |
| County Tax | $2,947.18 | | |
| School Tax | $11,153.38 | | |
| Township Tax | $2,626.97 | | |
| TOTAL | $19,160.34 | / 12 months = | $1,596.69 |

| Filing Date | 8/3/2019 |
|---|---|

| MONTH | ESC INCOMING | ESC OUTGOING | BALANCE | |
|---|---|---|---|---|
| Starting Balance | | | $16,213.22 | |
| August | $0.00 | $11,153.38 | $5,059.84 | |
| August | $0.00 | $2,626.97 | $2,432.87 | |
| August | $0.00 | $2,432.81 | $0.06 | |
| September | $1,596.69 | $0.00 | $1,596.75 | |
| October | $1,596.69 | $0.00 | $3,193.44 | |
| November | $1,596.69 | $0.00 | $4,790.13 | |
| December | $1,596.69 | $0.00 | $6,386.82 | |
| January | $1,596.69 | $0.00 | $7,983.51 | |
| February | $1,596.69 | $0.00 | $9,580.20 | |
| March | $1,596.69 | $2,947.18 | $8,229.71 | |
| April | $1,596.69 | $0.00 | $9,826.40 | |
| May | $1,596.69 | $2,432.81 | $8,990.28 | |
| June | $1,596.69 | $0.00 | $10,586.97 | |
| July | $1,596.69 | $0.00 | $12,183.66 | |
| August | $1,596.69 | $11,153.38 | $2,626.97 | |
| August | $0.00 | $2,626.97 | $0.00 | LP |

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41



# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __110%__ OF THE ORIGINAL AMOUNT (OR $_____550,000.00 ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__JUNE 01, 2006__ __PITTSBURGH__ , __PENNSYLVANIA__
CITY STATE

__1030 MERIDIAN DRIVE, PRESTO, PA 15142__
PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ___500,000.00___ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA__ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __7.518 %__. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __2.525__ %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __1ST__ day of each month beginning on __AUGUST, 2006__ , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __JULY 01, 2036__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148__ , or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $__1,982.11__, unless adjusted at an earlier time under Section 4(H) of this Note.

32859 (11-01) Page 1 of 6 LNT60USA (VERSION 1.0)

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ____1ST____ day of __AUGUST , 2006_____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding __THREE AND 375 / 1000_____ percentage points __3.375__% ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference is rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __TEN AND 35 / 100_____ percentage points __10.350__% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing __AUGUST 01 , 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

32659 (11-01)                    Page 2 of 6                    LNT60USB (VERSION 1.0)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to __110%__ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that __110%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __FIFTEEN__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

WITNESS THE HAND (S) AND SEAL (S) OF THE UNDERSIGNED.

*Angela Mammarelli-Simone*

ANGELA MAMMARELLI  SIMONE

Pay to the order of

Without Recourse
Washington Mutual Bank, **FA**

Cynthia A. Riley, Vice President

32859 (11-01)                Page 6 of 6                LNT60USF (VERSION 1.0)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

## Prepayment Fee Note Addendum

This Note Addendum is made this __1ST__ day of ____JUNE , 2006_____ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of __WASHINGTON MUTUAL BANK , FA_____ (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to __THREE__ percent ( ____3.000 %) of the original loan amount. If Noteholder receives prepayment after the first anniversary but on or before the __SECOND__ anniversary of the date of the Note, the prepayment fee shall be __TWO__ percent ( ____2.000 %) of the original loan amount. If Noteholder receives prepayment after the second anniversary but on or before the __THIRD__ anniversary of the date of the Note, the prepayment fee shall be __ONE__ percent ( ____1.000 %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

Notwithstanding the foregoing, Lender shall not impose a Prepayment Fee in the event that:

a) The loan is fully prepaid as result of disposing of the security property and Borrower obtains a new loan from Lender to purchase another property. The prepayment of the loan must occur simultaneously with the origination of the new loan; and

b) such prepayment occurs no earlier than the first anniversary of the date of the Note.

Nothing herein shall be deemed to be a commitment by Lender to make Borrower another loan. Borrower understands and agrees that should Borrower want to obtain a new loan from Lender, Borrower must meet all underwriting and other requirements of Lender in effect at the time Borrower applies for the new loan.

32690 (04-04)                    Page 1 of 2                    LRI46USA (VERSION 2.0)

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

## NOTICE TO THE BORROWER

**Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

_Angela Mammarelli Simone_

ANGELA MAMMARELLI SIMONE

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41



**Valerie McDonald Roberts**
Recorder of Deeds
Pittsburgh, PA 15219

**Instrument Number: 2006-59163**

Recorded On: **June 02, 2006**    **As-Mortgage**

Parties: **SIMONE ANGELA MAMMARELLI**

To    **WASHINGTON MUTL BANK F A**                    **# of Pages: 24**

Comment:

# **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

Mortgage                84.00

       Pages > 4    19
       Names > 4    0
Total:                  84.00

*I hereby certify that the within and foregoing was recorded in the Recorder's Office in Allegheny County, PA*

# **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

**File Information:**                    **Record and Return To:**

Document Number: 2006-59163
Receipt Number: 690726                    WASHINGTON MUTUAL BANK F A
Recorded Date/Time: June 02, 2006 02:14P         7255 BAYMEADOWS WAY
      Book-Vol/Pg: BK-M VL-32061 PG-388        JACKSONVILLE FL 32256
      User / Station: J Clark - Cash Super 06



**Valerie McDonald-Roberts Recorder of Deeds**

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Prepared By:
ALMA RODRIGUEZ

Return To:
7255 BAYMEADOWS WAY
WASHINGTON MUTUAL BANK, FA
JACKSONVILLE, FL 32256
DOC OPS M/S JAXG 1060

Parcel Number: 9905X83111

———————————— [Space Above This Line For Recording Data] ————————————

ZPA1 M39          **MORTGAGE**          ███████████

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JUNE 01, 2006
together with all Riders to this document.
(B) "Borrower" is ANGELA MAMMARELLI SIMONE, ALSO KNOWN AS A.S.
ANGELA SIMONE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is WASHINGTON MUTUAL BANK, FA

Lender is a FEDERAL SAVINGS BANK
organized and existing under the laws of THE UNITED STATES OF AMERICA

PENNSYLVANIA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

☼-6(PA) (0407)    Form 3039 1/01
Page 1 of 16      Initials: A.S.
VMP Mortgage Solutions, Inc. (800)521-7291

███████████

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Exhibit "A" -- Legal Description

ALL THAT CERTAIN lot or piece of ground situate in the Township of Collier,
County of Allegheny, and Commonwealth of Pennsylvania, being Lot Number 4 in
the Nevillewood No. 4 Plan of Lots, as recorded in the Recorder's Office of
Allegheny County, Pennsylvania in Plan Book Volume 172, Pages 140 to 149,
inclusive.

BEING DESIGNATED AS BLOCK AND LOT: 9905-X-8311

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV
89014
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated    JUNE 01, 2006
The Note states that Borrower owes Lender FIVE HUNDRED THOUSAND AND 00/100
Dollars
(U.S. $    500,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JULY 01, 2036
(E) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _A.S,_

ⓐ—6(PA) (0407)                    Page 2 of 16                              Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the
COUNTY                                of  ALLEGHENY                               :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL

which currently has the address of

1030 MERIDIAN DRIVE                                                    [Street]
PRESTO                             [City] , Pennsylvania 15142        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: _A.S._

-6(PA) (0407)                    Page 3 of 16                          Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be

Initials: _A. S._

-6(PA) (0407)                    Page 4 of 16                    Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Initials: A.S,

-6(PA) (0407)       Page 5 of 16       Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of

Initials: A.S.

VMP®—6(PA) (0407)    Page 6 of 16     Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the

Initials: _A. S._

⬤ -6(PA) (0407)               Page 7 of 16                          Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate

Initials: A. S.

VMP®-6(PA) (0407)   Page 8 of 16   Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any

Initials: _A.S,_

‐6(PA) (0407)            Page 9 of 16            Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the

Initials: _A.S._

-6(PA) (0407)  Page 10 of 16  Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security

Initials: A.S.

-6(PA) (0407)     Page 11 of 16     Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums

<table>
<tr><td>—6(PA) (0407)</td><td>Page 12 of 16</td><td>Initials: <i>A.S.</i></td><td>Form 3039 1/01</td></tr>
</table>

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Initials: _A.S._

—6(PA) (0407)                    Page 13 of 16                    Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Initials: _A.S._

VMP® -6(PA) (0407)                          Page 14 of 16                          Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

ZPA2

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____         _____ (Seal)
                                                                         -Borrower
                                           ANGELA MAMMARELLI SIMONE,
                                           ALSO KNOWN AS ANGELA SIMONE

_____         _____ (Seal)
                                                                         -Borrower
                                           ANGELA SIMONE, ALSO
                                           KNOWN AS ANGELA MAMMARELLI SIMONE

_____ (Seal)  _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                                -Borrower

-6(PA) (0407)                    Page 15 of 16                    Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

COMMONWEALTH OF PENNSYLVANIA, ALLEGHENY          County ss:

On this, the   1st   day of   JUNE , 2006   , before me, the undersigned officer, personally appeared   ANGELA MAMMARELLI SIMONE , ALSO KNOWN AS  Mrs. ANGELA SIMONE

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
William E. Boyle, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Sept. 26, 2007
Member, Pennsylvania Association of Notaries

_____
NOTARY PUBLIC
Title of Officer

Certificate of Residence
I,   WILLIAM E. BOYLE   , do hereby certify that the correct address of the within-named Mortgagee is   2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV  89014
Witness my hand this   1st   day of   JUNE  . 2006

_____
Agent of Mortgagee

Initials: A.S.

—6(PA) (0407)          Page 16 of 16          Form 3039 1/01

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

## ADJUSTABLE RATE RIDER
### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___1ST___ day of
__JUNE , 2006_____, and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same
date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the
"Note") to ___WASHINGTON MUTUAL BANK , FA_____ (the "Lender") of the
same date and covering the property described in the Security Instrument and located at:

__1030 MERIDIAN DRIVE , PRESTO , PA   15142_____
(PROPERTY ADDRESS)

> **THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
> INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT
> INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL
> AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY
> BORROWED, BUT NOT MORE THAN __110%___ OF THE ORIGINAL AMOUNT (OR
> $____550,000.00_____). MY INTEREST RATE CAN NEVER EXCEED THE
> LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT
> MATURITY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up
until the first day of the calendar month that immediately precedes the first payment due date set
forth in Section 3 of the Note, I will pay interest at a yearly rate of ___7.518_%. Thereafter until the
first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate of
_2.525___%. The interest rate I will pay will thereafter change in accordance with Section 4 of the
Note.

32843 (11-01)                    Page 1 of 6                    LRD02USA (VERSION 1.0)

Reviewer ID: Lashina Johnson_2019-10-21 10:15:41

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the <u>1ST</u> day of <u>AUGUST, 2006</u>, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding <u>THREE AND 375/1000</u> percentage points <u>3.375</u>% ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than <u>10.350</u>% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing <u>AUGUST 01, 2007</u>, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

32843 (11-01)                    **Page 2 of 6**                    LRD02USB (VERSION 1.0)

A.S.
Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to __110%__ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that __110%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

32843 (11-01)                      Page 3 of 6                      LRD02USC (VERSION 1.0)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

32843 (11-01)                    **Page 6 of 6**                    LRD02USE (VERSION 1.0)

Reviewer ID: Lashina_Johnson 2019-10-21 10:15:41

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

ANGELA MAMMARELLI SIMONE , ALSO KNOWN
AS ANGELA SIMONE

ANGELA SIMONE, ALSO KNOWN AS
ANGELA MAMMARELLI SIMONE

32843 (11-01)                    Page 6 of 6                    LRD02USF (VERSION 1.0)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

Prepared By / Return To:
E.Lance/NTC, 2100 Alt. 19 North,
Palm Harbor, FL 34683
(800)346-9152

Loan #

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage dated 06/01/2006, in the amount of $500,000.00 made by ANGELA MAMMARELLI SIMONE, ALSO KNOWN AS ANGELA SIMONE to WASHINGTON MUTUAL BANK, FA recorded on 06/02/2006, in the Office of the Recorder of Deeds of ALLEGHENY County, Pennsylvania, in Book 32061, Page 388 (or Document # n/a)

Property more commonly known as: 1030 MERIDIAN DRIVE TWP. OF COLLIER, PRESTO, PA 15142

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

**Loan #:** ▮▮▮▮▮▮

IN WITNESS WHEREOF, this Assignment is executed on ___11___ / _06_ /2012 (MM/DD/YYYY)
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, its Attorney-in-Fact (POA RECORDED; 09/18/2012  BK: 666  PG: 368  INSTR#:
2012-1459)

By: _____    **VICE PRESIDENT**

STATE OF LOUISIANA    PARISH OF OUACHITA
On ___11___ / _06_ /2012 (MM/DD/YYYY), before me appeared _Ashley P Clegg_ ,
to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE
BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL
BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its
board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation
(or association).

_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

HELEN P. TUBBS, NOTARY PUBLIC
MOREHOUSE, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 40392

Assignment of Mortgage from:
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000,
MONROE, LA, 71203, (ASSIGNOR),
to:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgagor: ANGELA MAMMARELLI SIMONE, ALSO KNOWN AS ANGELA SIMONE

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 1030 MERIDIAN DRIVE TWP. OF COLLIER
                  PRESTO, PA 15142
                  ALLEGHENY
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, _____ . , do certify that the precise address of the within named assignee
is:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

By: _____    **VICE PRESIDENT**

**Allegheny County**
**Valerie McDonald Roberts**
**Department of Real Estate**
**Pittsburgh, PA 15219**

**** **Electronically Filed Document** ****

---

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

**Document Number: 2013-7423**

**Recorded As:** **ERX-MORTGAGE ASSIGNM**

**Recorded On:** **January 28, 2013**

**Recorded At:** **09:06:29 am**

**Number of Pages:3**

**Book-VI/Pg:** **Bk-M VI-42041 Pg-59**

**Recording Fee:** **$150.00**

**Parties:**

**FEDERAL DEPOSIT INSURANCE CORPORATION A**

**JPMORGAN CHASE BANK NATIONAL ASSOCIATION**

**Receipt Number:**

**Processed By:** **Elena Walls**

I hereby certify that the within and foregoing was recorded in the Department of Real Estate's Office in Allegheny County, PA

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**



Valerie McDonald Roberts, Manager
Rich Fitzgerald, County Executive

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number**

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] **ANGELA M SIMONE**
Lender or Servicer ("Lender"): **JPMORGAN CHASE BANK, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**JUNE 01, 2006**
Loan Number:
Property Address ("Property"): **1030 MERIDIAN DR, PRESTO, PENNSYLVANIA 15142**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement and the Streamline HAMP Affidavit to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.    The Property has not been condemned;

    C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    E.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    F.    I have made or will make all payments required under a Trial Period Plan.

    G.    If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

    H.    I am also attesting by signing that I am aware that the loan must be secured by a property that is either owner-occupied or a rental.

2.    **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

CR44061-b
OP909
*(page 1 of 8 pages)*

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number**

A. If prior to the Modification Effective Date as set forth in Section 3, the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **NOVEMBER 01, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect. The first modified payment will be due on **NOVEMBER 01, 2016.**

A. The Maturity Date will be: **OCTOBER 01, 2056**.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$454,940.18** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of **3.000%** will begin to accrue on the New Principal Balance as of **OCTOBER 01, 2016**, and the first new monthly payment on the New Principal Balance will be due on **NOVEMBER 01, 2016**. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount[1] | Total Monthly Payment[1] | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 40 | 3.000% | 10/01/2016 | $1,628.61 | $1,448.18, may adjust periodically | $3,076.79, may adjust periodically | 11/01/2016 | 480 |

ver. 10_10_2016_23_15_15

CR44061-b
OP909
(page 2 of 8 pages)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number** 

[1] The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other assistance plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement or by the United States Bankruptcy Code, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That, if I am in bankruptcy upon execution of this document, I will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. I understand that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void,

ver. 10_10_2016_23_15_15

CR44061-b
OP909
*(page 3 of 8 pages)*

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number**

the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

E. Intentionally Deleted.

F. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement or by the United States Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

ver. 10_10_2016_23_15_15

CR44061-b
OP909
*(page 4 of 8 pages)*

**Loan Number**

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is 1-888-679-MERS (1-888-679-6377). In cases where the loan has been registered with MERS, who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD-certified housing counselor. I understand and consent that Lender and any such HUD-certified housing counselor may pull my credit report if I receive housing counseling.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4. O. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the

CR44061-b
OP909
*(page 5 of 8 pages)*

**Loan Number**

date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Q. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number**

## TO **BE SIGNED BY BORROWER ONLY**

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE
BANK, N.A. And ANGELA M SIMONE, LOAN NUMBER WITH A MODIFICATION
EFFECTIVE DATE OF November 01, 2016

In Witness Whereof, the Borrower(s) have executed this agreement.

Borrower - **ANGELA M SIMONE**

Date: **10, 19, 16**

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

**Loan Number**

### TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK,
N.A. And ANGELA M SIMONE, LOAN NUMBER            WITH A MODIFICATION EFFECTIVE DATE
OF November 01, 2016

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:

Todd Hale
Vice President

Execution Date: _____ **11-8-2016** _____

CR44061-b
OP909
*(page 8 of 8 pages)*

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

# Making Home Affordable Program
# Streamline HAMP Affidavit



MAKING HOME AFFORDABLE.gov

*Each borrower and co-borrower is required to sign this Affidavit as a condition of receiving a streamline mortgage modification under the Home Affordable Modification Program (HAMP). Each reference to "I" or other similar words means each borrower and co-borrower signing below.* **When you sign and date this Affidavit, you will be certifying, under penalty of perjury, that all of the statements, representations** *and certifications made herein are true and correct.*

| LOAN ID NUMBER | PROPERTY ADDRESS | MORTGAGE SERVICER |
|---|---|---|
| | 1030 MERIDIAN DR, PRESTO, PENNSYLVANIA 15142 | JPMorgan Chase Bank, N.A. |

### HARDSHIP AFFIDAVIT

I understand that having a financial hardship is a condition to receiving a mortgage modification under HAMP. I hereby certify that I am experiencing a financial hardship, and as a result, I do not have sufficient income or access to sufficient liquid assets to make the contractual monthly mortgage payments now or in the near future. Examples of financial hardships include, but are not limited to, reduced household income, increased household expenses, unemployment, excessive debt payments, and insufficient cash reserves.

### DODD-FRANK CERTIFICATION

The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program (MHA), authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I certify under penalty of perjury that I have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction: (a) felony larceny, theft, fraud, or forgery, (b) money laundering or (c) tax evasion.

I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may investigate the accuracy of my statements by performing routine background checks, including automated searches of federal, state and county databases, to confirm that I have not been convicted of such crimes. I also understand that knowingly submitting false information may violate Federal law. This certification is effective on the earlier of the date listed below or the date this Affidavit is received by my servicer.

### RENTAL PROPERTY CERTIFICATION

I understand that I am only eligible for a mortgage modification under HAMP if the property described above is my principal residence OR a rental property. If the property described above is a rental property and **not my principal residence, I hereby make the following certifications:**

(a) I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the U.S. Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period. The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.

(b) The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein. The term "secondary residence" includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.

(c) I do not own more than five (5) single-family homes (i.e., one-to-four unit properties) excluding my principal residence.

**Notwithstanding the foregoing certifications, I may at any time sell the property, occupy it as my principal residence, or permit my legal dependent, parent or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with the certifications made herein.**

## OTHER HAMP MODIFICATIONS

I have notified my mortgage servicer of any trial period plan or permanent mortgage modification that I previously received under HAMP for any other property I own or have owned in the past, individually or jointly with other borrowers. I understand that my mortgage servicer needs this information to determine my eligibility for HAMP.

## INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. **You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it.** If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if your lender or servicer interviewed you in person. If you do not wish to furnish the information, please check the box below.

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino |
| | ☐ Not Hispanic or Latino | | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native | Race: | ☐ American Indian or Alaska Native |
| | ☐ Asian | | ☐ Asian |
| | ☐ Black or African American | | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | | ☐ Native Hawaiian or Other Pacific Islander |
| | ☐ White | | ☐ White |
| Sex: | ☐ Female | Sex: | ☐ Female |
| | ☐ Male | | ☐ Male |

| To be completed by interviewer | | Name/Address of Interviewer's Employer |
|---|---|---|
| This request was taken by: | Interviewer's Name (print or type) & ID Number | |
| ☐ Face-to-face interview | | |
| ☒ Mail | Interviewer's Signature              Date | |
| ☐ Telephone | Interviewer's Phone Number (include area code) | |
| ☐ Internet | | |

## NOTICE TO BORROWERS

Be advised that by signing this document you understand that any documents and information you submit to your servicer in connection with the Making Home Affordable Program are under penalty of perjury. Any misstatement of material fact made in the completion of these documents including but not limited to misstatement regarding your occupancy of your property, hardship circumstances, and/or income, expenses, or assets will subject you to potential criminal investigation and prosecution for the following crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for investigation and prosecution. By signing this document you certify, represent and agree that: "Under penalty of perjury, all documents and information I have provided to my Servicer in connection with the Making Home Affordable Program, including the documents and information regarding my eligibility for the program, are true and correct."

If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program, please contact the SIGTARP Hotline by calling 1-877-SIG-2009 (toll-free), or www.sigtarp.gov and provide them with your name, our name as your servicer, your property address, loan number and the reason for escalation.

### Beware of Foreclosure Rescue Scams. Help is FREE!

- There is never a fee to get assistance or information about the Making Home Affordable Program from your lender or a HUD-approved housing counselor.
- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

Reviewer ID: Lashina_Johnson_2019-10-21_10:15:41

## ACKNOWLEDGEMENT AND AGREEMENT

1. I understand that the Servicer, the U.S. Department of the Treasury, the owner or guarantor of my mortgage loan, or their respective agents may investigate the accuracy of my statements, may require me to provide additional supporting documentation and that knowingly submitting false information may violate Federal or other applicable law.

2. I authorize and give permission to the Servicer, the U.S. Department of the Treasury, and their respective agents, to assemble and use a current consumer report on all borrowers obligated on the loan, to investigate each borrower's eligibility for HAMP and the accuracy of my statements and any documentation that I provide in connection therewith. I understand that these consumer reports may include, without limitation, a credit report, and be assembled and used at any point to assess each borrower's eligibility thereafter.

3. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or if it is determined that any of my statements or any information contained in the documentation that I provide are materially false and that I was ineligible for HAMP, the Servicer, the U.S. Department of the Treasury, or their respective agents may terminate my participation in HAMP, including any right to future benefits and incentives that otherwise would have been available thereunder, and also may seek other remedies available at law and in equity, such as recouping any benefits or incentives previously received.

4. I certify that the property located at the address set forth above is a habitable residential property that is not subject to a condemnation notice.

5. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.

6. I understand that the Servicer will use the information I provide to evaluate my eligibility for HAMP, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with HAMP.

7. If I am eligible for HAMP, and I accept and agree to all terms of a related trial period notice, plan, or agreement, I also agree that the terms of this Acknowledgment and Agreement are incorporated into such notice, plan, or agreement by reference as if set forth therein in full. My first timely payment following my servicer's notification of my eligibility for HAMP has served or will serve as my acceptance of the terms set forth in the notice, plan, or agreement sent to me.

8. I understand that my Servicer will collect and record personal information that I submit in this Affidavit or through other means, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about my account balances and activity. I understand and consent to the Servicer's disclosure of my personal information and the terms of any HAMP notice, plan or agreement to the U.S. Department of the Treasury and its agents, Fannie Mae and Freddie Mac in connection with their responsibilities under HAMP, companies that perform support services in conjunction with HAMP, any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) and to any HUD-certified housing counselor.

9. I consent to being contacted concerning my mortgage modification at any e-mail address or cellular or mobile telephone number I have provided to the Servicer. This includes text messages and telephone calls to my cellular or mobile telephone.

**The undersigned certifies under penalty of perjury that all statements in this document are true and correct.**

| | | | |
|---|---|---|---|
| Borrower Signature<br>ANGELA M SIMONE | Social Security Number | Date of Birth | Date 10/19/16 |
| Co-Borrower Signature | Social Security Number | Date of Birth | Date |

## HOMEOWNER'S HOPE HOTLINE

If you have questions about this document or the Making Home Affordable Program, please call your servicer.

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline can help with questions about the program and offers free HUD-certified counseling services in a variety of languages.

**888-995-HOPE**™
Homeowner's HOPE™ Hotline